

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-4620

Re: Under the facts submitted are the
benefits offered by the Dallas
Automobile Club considered in-
surance benefits, and if so, does
the Club come under the super-
vision of the State Insurance
Department?

Your letter of May 26, 1942, requesting the opinion
of this department on the above stated question reads as
follows:

"The above named Club, located in the Adol-
phus Hotel in Dallas, is affiliated with the Amer-
ican Automobile Association, which is said to be
operating in all forty-eight states and a number
of foreign countries. The Dallas Automobile Club
appears to be a non-profit organization in every
respect, its activities being devoted to civic
functions and to the promotion of public safety.
This organization was incorporated as a Club and
received Charter Number 38499 from the Secretary
of State on August 25, 1922. The Club is operated
on a membership basis, the members paying annual
dues of $12.00. Annual membership meetings are
said to be held, the members electing the Direc-
tors who are responsible for the management of
the Club's affairs. Directors receive no compen-
sation for their services and meetings are held
monthly. There are only three salaried employees,
two office girls and one man. Mr. C. E. McDonald
is in charge of the office and all services.

"The Club secures its members by direct soli-
citation and through other members who are contacted

Honorable O. P. Lockhart, Page 2

by Mr. C. E. McDonald. The applicant applies
for membership to the Board of Directors and
agrees to abide by the rules and regulations of
the Club and pays $12.00 for one year's dues.
The membership covers passenger cars only. When
the application for membership has been approved,
the member receives a folder containing a mem-
bership card, a Western Union 'collect' card, a
certificate for bail bond, which describes the
procedure for usage, and a brochure describing
the purposes and facilities offered by the Club.
This booklet lists the services that are given
to members some of which are as follows:

"(1)    Every member is given a Bond Certi-
ficate to present at the time of ar-
rest anywhere in the United States.
It assures both the member and the
Court that an agent of AAA or the
National Surety Corporation will make
bail for the member in any amount up
to $5,000.00 for any violation of
motor vehicle laws except a charge
of drunken driving.

"(2)    When a member's car is disabled in
any way the Club will pay for ten
miles of towing.

"(3)    If member's car overturns, slips into
a ditch, or is otherwise in need of
extricating services, AAA will pro-
vide that service upon call.

"(4)    When member's car will not proceed
under its own power, AAA will send
a mechanic a distance of ten miles
to make emergency repairs at the
scene of the trouble provided the
repairs can be accomplished in thirty
minutes. If more repairs are needed
the service falls under the classi-
fication of Towing.

"(5)    No charge is made for sending a ser-
vice car up to ten miles to change a
tire on member's car.

Honorable C. P. Lockhart, Page 3

"(6) Should a member receive any of these services from a garage not affiliated with the Club, he is instructed to mail his receipt for said service to the Club office at Dallas for reimbursement. The Club will honor such receipt up to, but not to exceed $5.00.

"In addition to the above, a personal Accident Insurance Policy in the amount of $1,000.00 is given to each member. This policy is written by the Great American Reserve Insurance Company of Dallas, Texas, to members residing in Texas. It is a highly restricted automobile policy and is written in consideration of an annual premium of $1.25. The policy is countersigned by a Miss George, who is authorized and licensed Agent for the Great American Reserve Insurance Company, as well as an employee of the Dallas Automobile Club.

"We request your opinion as to whether or not the above benefits offered by the Club are 'insurance benefits' and if so, if the Club should come under the supervision of this Department.

"We are forwarding to you for your consideration of this question the following papers:

"(1) Application for Membership in Dallas Automobile Club
"(2) Membership Card and Western Union 'Collect' Card
"(3) A Certificate for Bail Bond
"(4) A Brochure describing the purposes and facilities offered by the Club.
"(5) Specimen Copy of Accident Insurance Policy.

"Please return the above enclosures to us when you have rendered an opinion on this question."

The Dallas Automobile Club was incorporated as a club and received its charter from the Secretary of State on August 25, 1922, under subdivision 2 of Article 1121, Revised Civil Statutes of Texas, 1911.

Article 1121, supra (now Article 1302, Vernon's Annotated Civil Statutes), specified or named the purposes for

Honorable O. P. Lockhart, Page 4


which private corporations could be formed. Subdivision 2 of said article provided:

"2. The support of any benevolent, charitable, educational or missionary undertaking."

Subdivision 2, Article 1302, Vernon's Annotated Civil Statutes, provides:

"2. The support of any benevolent, charitable, educational or missionary undertaking."

It will be noted that subdivision 2 of Article 1302, supra, and subdivision 2 of Article 1121, Revised Civil Statutes, 1911, are identical.

The purpose clause of the above mentioned corporation reads as follows:

"The purpose for which said corporation is formed is: the support of an educational undertaking and particularly to promote the improvement of highways and the education of its members in the requirements of the laws of the State of Texas, and the social enjoyment pertaining to the owners of automobiles, and the cooperation of its members for the betterment of its public highways and for such other purposes as are expressly or impliedly authorized under subdivision 2, Article 1121, of the Revised Civil Statutes of Texas, relating hereto."

Subdivision 91, Article 1302, supra, (Acts 1929, 41st Legislature, p. 102, ch. 47, sec. 1) provides:

"91. Corporations may be created to establish, support and maintain automobile clubs for the mutual benefit and protection of automobile operators, with power to acquire and own all property incidental to such business. Nothing in this Act shall be construed as legalizing corporations to write insurance as agents."

The Dallas Automobile Club was incorporated under subdivision 2 of Article 1121, Revised Civil Statutes of 1911, as above stated, and prior to the enactment of subdivision 91 quoted above. However, it will be noted that subdivision 91, supra, specifically provides: "Nothing in this Act shall be construed as legalizing corporations to write insurance as agents."

The case of National Auto Service Corporation v. State, 55 S. W. (2d) 209, construing subdivision 91, Article 1302, supra, holds in effect that whether a contract is one of insurance is determined by its purpose, effect, contents and import, and not necessarily by the terminology used, though it contains declarations to the contrary. This case further holds that a membership certificate providing that for annual dues a corporation would repair accidental damage to a member's automobile in a specified amount was an insurance contract and not a service charge warranting the forfeiture of the charter of the corporation because the corporation issuing such certificates failed to comply with the insurance laws of this State.

The services rendered by the Dallas Automobile Club mentioned in your letter, set forth in subdivisions 2-6, inclusively, under paragraph 2 are almost identical with the services rendered by the National Auto Service Corporation in the case mentioned above.

Cooley's Briefs on Insurance, Section Edition, Volume 1, page 6, defines insurance as follows:

"Insurance has been defined in general terms as a contract by which one party undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event.

". . .

". . . a contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent or do some act of value to the assured upon the destruction or injury of something in which the other party has an interest. . . ."

The word "insurance" is defined in Texas Jurisprudence, Volume 24, page 650, as follows:

"'Insurance' is a word of comprehensive and varied meaning. In a general sense the term signifies an agreement, for a consideration, to pay a sum of money upon the happening of a particular event or contingency, or indemnity for loss in respect of a specified subject by specified perils; in other words, an undertaking by one

Honorable C. P. Lockhart, Page 6

party, usually called the 'insurer', to protect the other party, generally designated as the 'insured' or the 'assured', from loss arising from named risks, for the consideration and upon the terms and under the conditions recited."

Under the facts stated in your letter it is apparent that the Dallas Automobile Club has made no effort to comply with the insurance laws of the State. It was incorporated under the general incorporation statute and not the laws relating to insurance companies. Therefore, certainly it has no express authority acting as a principal to insure its members. It is obvious that it is not authorized to issue any form of insurance contract.

In view of the foregoing, it is our opinion that the membership certificate of the Dallas Automobile Club providing that for annual dues the corporation will repair accidental damage, etc., to a member's automobile in a specified amount is an insurance contract, and that said Dallas Automobile Club has no authority whatsoever to act as a principal to insure its members or enter into such contracts. As the Dallas Automobile Club has no authority to enter into the contract above mentioned, it would not come under the supervision of the State Insurance Department.

We do not hold that the Insurance Department of this State is without authority to make investigation to determine whether the insurance laws are being violated and to see that no company does an insurance business without authority of law. The Insurance Department can make such investigation as is proper and take such steps and make such recommendations as may be necessary pertaining to the enforcement of the insurance laws and requiring a compliance therewith. (See Article 4682, V. A. C. S.)

In compliance with your request we are returning herewith the enclosures accompanying your request.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JAN 13, 1942

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN

AW:GC

ENCLOSURES